We'll move to the second case this morning, SportFuel v. PepsiCo, Inc. Your Honor. Good morning, Your Honors. May it please the Court. Because this is an appeal from a summary judgment decision, the standard of review is de novo. So it's the lowest threshold that you can have under the law. There's no deference. So we're going to take a fresh look at the facts and the law today. Now, to establish a fair use defense, which Gatorade is asserting, they have the burden of proving three elements. And if there is a genuine issue of material fact on any one of the three elements, the judgment should be vacated and the case remanded. The three elements are, number one, Gatorade has to show that they're not using the accused mark in a trademark sense. Number two, they have to show that they acted in good faith. And number three, Gatorade has to show that the accused mark is descriptive under the trademark statute, not suggestive. Again, if there's a fact issue on any one of those, this should be vacated and remanded. And, again, we're merely seeking to have a trial on the merits.  So the first element is whether Gatorade used the accused mark as a trademark. And there's four main facts that we submit require the judgment to be vacated. Number one, Gatorade put the letters TM next to the slogan Gatorade, the sport fuel company. The TM is a notice to the public that that term, that slogan, is being used as a trademark, not merely to describe the goods or services, but as a trademark. So the fact that Gatorade itself put a TM next to the slogan Gatorade, the sports fuel company, shows that Gatorade was using this as a trademark. How do you respond to their argument that it's a non-exclusive trademark? Non-exclusive in the sense that they have the term Gatorade in the slogan as well. Not exclusive in the sense of even though they're trademarking it, they're indicating this falls within the exception and we're not saying it's exclusive. Well, the fact that they have the TM and filed a trademark application shows that they were using this in the trademark sense, not to describe the goods or services. Even if they say they're doing so in a non-exclusive way? That's correct. The second fact is that Gatorade, in its own documentation, said they want to rebrand the company as the sports fuel company. That was in their own documentation. Now, Gatorade presents one possible inference you can draw from that document. We submit that on summary judgment, the inferences should be in our favor. And this is a branding issue. This is not a descriptive or describing the goods or services. They're trying to brand the company as the sports fuel company. The fourth fact that supports us in this case or on this element is the deposition testimony of the chief marketing officer from the defendant. Now, he said in his deposition under oath that Gatorade is using the slogan as a trademark. When it's in combination with the word Gatorade and the G bolt. That's correct. So that was the entirety of his deposition reference, correct? That's correct. And the Sands-Taylor case, in which the district court granted summary judgment in favor of the trademark owner, so it's the complete opposite of here. The slogan was Gatorade is thirst aid for that deep down body thirst. And even though the name Gatorade was used in the slogan, the court still found that there was no fair use as a matter of law, and that was affirmed by this court. So the mere fact that you're using the housemark in the slogan does not absolve you from being subject to no fair use. That exact language is in the Sands-Taylor case, that you can't just use a housemark and then be free to use someone else's trademark. Now, the district court dismissed that deposition testimony by saying that the chief marketing officer and 30B6 witness of the defendant was not a lawyer, wasn't a trademark expert. But there's no case law that says you need a trademark expert to talk about whether the defendant was using these terms in a trademark sense versus just describing the goods or services. And if we had submitted a declaration from a lawyer, I can imagine what the other side would be arguing right now in terms of whether that would be sufficient to overcome summary judgment. I don't know how that would be better evidence than the testimony from their own witness saying that they're using this in a trademark sense. Now, they didn't put the TM next to the term Gatorade. They put it at the end of the entire slogan. So they're using that as a trademark. The other point is that Gatorade already had the incontestable, decades-old registration on the term Gatorade, yet they still filed a trademark application on the slogan, Gatorade, the sports fuel company. So they did that not in connection with the term Gatorade or the Bolt. They did that to get trademark rights or to tell the patent office and trademark office that they were using the slogan in the trademark sense. Now, why would they file a trademark application on that slogan if they weren't using it as a trademark? I'd submit, at least on summary judgment, we're entitled to the inference in our favor. Now, the second element is whether the defendant acted in good faith. Now, that's a deeply fact-intensive issue. It goes to the subjective state of mind of the defendant. Here we have Gatorade was not only aware of our client and our trademark on sport fuel, but the two companies had actually done some business together. Ms. Burns worked with Gatorade and made presentations at Gatorade on the nutritional aspects of her company. So Gatorade was deeply aware of our client and her use of the term sport fuel and the trademarks on sport fuel, yet they went ahead anyway and started using those terms to market and promote its products. Now, in addition, Gatorade did not produce any opinion from any attorney giving them clearance to use this trademark. So they can't rely on good faith advice of counsel as a defense to our claim of willfulness or to show that they acted in good faith. On top of that, there's really no internal documentation at all. I mean, if they're rebranding the company, the size of Gatorade, as a sports fuel company, you would think there would be some documentation internally saying, yeah, we have clearance to use this mark or these terms, and there is nothing in the record that they produce. Now, we think that entitles us to an inference that they were not acting in good faith. Well, it could be the inference the other way, too. They didn't think there was any problem. It could be, although I would think that there would be a document that says that, and if there are two inferences that are both reasonable on summary judgment, the law says that the plaintiff is entitled to the, or the non-movement, is entitled to the inference in its favor. I think if you take just one of those factors or facts, they could find a case that says mere knowledge of someone else's trademark does not indicate bad faith. But here we have more than that. There's a number of facts that support our position. Now, the third element is whether the trademark is descriptive or suggestive. We would submit that it takes a little bit of mental effort to hear the term sports fuel and think of nutritional products or services. I mean, that's not a term that's in the dictionary or a commonly used term or phrase, sports fuel. On top of that, Gatorade, their consumers are not all athletes or people playing sports. I think in the deposition, again, of their chief marketing officer, he said over half of their consumers are people that don't even play sports. It's used in hospitals to rehydrate people or a person mowing their lawn who's thirsty in the summer will drink Gatorade. So how is sports fuel descriptive of their products and services when half of their consumers are not even athletes playing sports? Again. Well, half the people who are maybe more than half the people who wear athleisure clothing are not athletes or intending to. I mean, I think it makes people feel better about drinking a particular product or wearing a certain kind of clothing if they feel like, oh, athletes do this. And that's true, Your Honor. But I think that is the kind of mental leap. It's not just a pure descriptive term where you immediately know what this is talking about. NASCAR is a sport, and people often associate fuel with gasoline. So sports fuel could be a new type of gasoline for a NASCAR. You have to get from the term sport fuel to the product that's being offered. There has to be some mental leap. And that makes it into the suggestive realm as opposed to descriptive. And, again, this is a question of fact. All three elements of the fair use defense are fact questions. So, again, any one of those turns this in our favor. On this descriptive point, though, didn't the PTO say that this phrase, the sports fuel company, was not protectable precisely because it was descriptive in nature? The Patent Office did say that, and that would be a fact in defendant's favor on that issue. I'm not saying that this is so one-sided that we should have judgment in our favor. There's facts supporting both people. But the fact that the Patent Office said this is a descriptive term is not dispositive on the issue of whether a mark is descriptive or suggestive. And just to provide the court with the quote from Sands-Taylor, it's 978 up second at page 954, where it says, quote, We have never said, however, that a descriptive term can never function as a trademark. Such a rule would not only conflate two of the three elements of fair use. It would also be contrary to the well-established doctrine that a descriptive term is protectable as a trademark to the extent it has developed secondary meaning, nor is a defendant's use of a term in conjunction with its own trademark per se a use other than as a trademark. So, again, in the Sands-Taylor case, the court found that the mark was descriptive, but still granted summary judgment in favor of the trademark owner on fair use because the mark was being used as a trademark, even though Gatorade used its housemark in connection with the phrase, Gatorade is thirst aid for that deep down body thirst. I'd just like to address very briefly the Gatorade, I think, maybe realizes that they have an uphill battle on the fair use issue because they devote a substantial portion of their brief to the issue of likelihood of confusion, which they say is an alternative basis on which this court can affirm the judgment. Now, when you get into likelihood of confusion, that's a deeply fact-intensive inquiry. There are eight factors. Each one is a question of fact with a cascading series of factual underpinnings. You get into the fact that both trademarks are very similar, not substantially identical. The consumer base is overlapping. We're talking about nutritional products and services. The issue of the surveys, we conducted two surveys, one which was identically the same in methodology as the survey that was approved in the Sands-Taylor case, and that showed substantial levels of confusion. And we had a second survey conducted by an independent separate expert that also found likelihood of confusion. So when you get into those factors, if the court dives into that deeply fact-intensive inquiry of likelihood of confusion, there are even more fact questions there than on fair use. And my final point, so I can save five minutes for rebuttal, is the district court on the first page of the opinion footnote one said that he assumed plaintiffs were not asserting the sport fuel trademark against the Gatorade product that used the term sports fuel. And we submit, we showed in the record where we were asserting our trademark against those products. It was, the court found an implied waiver. There was no express waiver anywhere that we said we're not asserting sport fuel against the products that are termed sports fuel by the defendant. And there's an array of uses that the defendant has on sports fuel. It's on slogans that are in print advertising, television advertising. It's on the wall when you walk into one of their facilities. So sports fuel is used. Sometimes Gatorade is above the sports fuel company slogan. Sometimes it's next to it, different font sizes. So the fact that they use it in so many ways, we're asserting any use that they have of sports fuel, we're asserting infringement of. And we would submit that it was improper to find an assumed waiver on our part. Thank you, Your Honors. Thank you, Counsel. Mr. Mandel? Good morning, Your Honor. Lloyd Mandel for the affilies. I am with my colleague, Julia Mazur. May it please the court, I'd like to first address some of the questions Your Honors have raised with Counsel. The U.S. Patent and Trademark Office clearly found, it's an exhibit in this case, that the sports fuel company, no one can have exclusive rights to that. Our client disclaimed exclusive rights. If you look at the Ocean Spray case that was decided by Judge Easterbrook, he clearly said that Ocean Spray was using Sweet Tart descriptively. And although there was maybe a use about a Sweet Tart of a deal, that did not mean that they could assert rights against any other company using Sweet Tart. The affilies do not believe that they could stop anybody from using sports fuel descriptively. Your Honors, the record is quite clear about what their plans are. The exhibit showed the internal documents that they wanted to rebrand their image as being a sports fuel company rather than just a hydrating company. And they named competitors. Everything from Muscle Milk to Cliff Bars to Powerade is also using sports fuel. Your Honors, if you look at Exhibits 12 and 50 of the deposition that we took of the plaintiff, you will see that that party used sports fuel to describe her products or fuel for sports, which I would submit is the same. Third parties use the term sports fuel. Everything from Mayo Clinic to Runner's World to nutritional magazines use the term descriptively. It does not take any great imagination to understand that sports fuel for sports fuel is descriptive. Fuel has been used by Gatorade since 1999, and it's been used by others. We have examples of third parties such as Wheaties, Powerade, others that talk about fuel and refuel. The Runner's World magazine talks about fueling for marathons. And the fact that not everybody is participating in sports, I challenge the court to find one commercial where Gatorade is not used in connection with sports. All of them have to do with sports, because a doctor may prescribe it if you have diarrhea and you're dehydrated. It doesn't mean that every use has to be for sports. The courts are quite clear that all you need to do is describe a characteristic. I'd submit that there is no question of fact that remains for trial as to whether this is descriptive. As far as good faith, Your Honor, I believe that all of the internal documents we have submitted, and Your Honors will find those clearly in the record. Excuse me. I had them marked for Your Honor's convenience. It exhibits C, G, H, J, K. All of them describe what the intention was in adopting the sports fuel tagline. Your Honor, the tagline clearly was something that we said we wanted to be in the sports fuel category. People would not be naming competitors as other sports fuel companies if they wanted to have exclusivity. So there's no question of fact with respect to good faith, Your Honor. In terms of the use of the TM, Your Honor, we don't see that as an issue of fact that remains for trial. They used TM for Gatorade, the sports fuel company. That is a slogan that was registered as a trademark. That doesn't mean that you parse it out and dissect it and say, well, sports fuel company is separate and apart. Court can take judicial notice that Kentucky Fried Chicken is registered. Fried chicken is disclaimed. Does that mean that Kentucky Fried Chicken can stop other people from describing their products as fried chicken if it's fried chicken? Absolutely not. Your Honor, I believe I have covered everything that counsel has raised in terms of the fair use. Let me say a few words about likelihood of confusion. It's clear, Your Honors, that likelihood of confusion is often a fact determination. But if you look at every factor in the likelihood of confusion analysis, it favors our client. The appearance, unlike what has been asserted in Appellant's brief, it's not sport fuel, one word, versus sports fuel, two words. It's Gatorade, the sports fuel company, in a particular font, in a particular color, in a particular style, versus sport fuel, one word, for a nutrition company. Now, they admit in their brief, reply brief, page 20, that their core business is a nutrition consulting firm. They're not direct competitors. Gatorade is not a nutrition consulting firm. Moreover, Your Honor, you look at, in a reverse confusion case, you look at the customers of the plaintiff. And this is a reverse confusion case. Plaintiff's customers pay a minimal of hundreds of dollars to choose a nutritionist. Sometimes it's thousands of dollars. It's not like buying a pack of gum off of a counter in a grocery store. You take some time and attention to determine whom you are seeing, whom you are paying money to, whom you are entrusting to put nutrients into your body, before you make a decision. You make a reasoned decision when you're doing something like that. And appellant admitted that when she provides products or some of her clientele are buying things to put into their bodies, especially the athletes, they should look at the labels. The court knows that in these days, performance enhancing drugs, or PEDs, are of major concern to athletes. They are not just putting something into their system without looking at it. You are not going to see either party in the same kind of retail merchandising store. You cannot even buy the products of the appellant off of her website right now. And when you could, it was password protected. And she would have to advise you before you could buy it. Your honors will also find no trademark use on a product of sports fuel. We believe they waived their argument because they never addressed it on appeal. But your honors, we don't care if they waived it or not because we think nothing shows more clearly that sports fuel used by Gatorade is a descriptor than the use on the Prime sports drink. The trademarks are Gatorade, the G-Bolt, and Prime. Sports fuel is used the same size, font, appearance as the term drink. So waiver or no waiver, we think that that substantiates our position. Gatorade has no intention of trademark rights in the term sports fuel. You always use sports drinks, but you have chews, energy bars, and other items. Do you sell capsules? Your honor, if we sell capsules, I am unaware of them. I don't think we sell capsules. We sell bars and chews, and there may be some powders. But the primary competitors are the Clif Bars, the Muscle Milks, the Powerades of the world. Are there any other questions that your honors may have? Thank you for the privilege, your honor.  Mr. Nero? Thank you again. I just wanted to provide the court with a cite to the document I was referring to about Gatorade rebranding itself. That's docket entry 78-1. It's on the second page. It's an internal Gatorade document that says, quote, And sports fuel has capital S and capital F. Now they want to say that, hey, this is no big deal. We're just describing our product. But in their documentation that we submitted to the court, they're talking about rebranding the entire company as the sports fuel company. Did they expand the kind of products that they were selling then? Yes. Gatorade is expanding beyond just products. They're offering now nutritional services. And that is in the deposition testimony that we cited. In fact, there's a big overlap now between products and services. Gatorade has things like a water bottle that you're drinking on the sidelines. And it can judge based on your saliva whether you're dehydrated or not. And a different light will show up on the bottle. So Gatorade is not just offering products, but is offering nutritional services. And our client offers both products, or at least over the course of the relevant time period, offered products. So barrels that you can dump over coaches? Pardon? Oh, yeah. So, yeah, and when Gatorade filed the trademark application on the phrase Gatorade the sports fuel company, it was on the principal register. They were telling the trademark office we're entitled to a trademark on this slogan. It was only after the rejection that they then disclaimed a part of that mark. But under 15 U.S.C. Section 1052-F, what that means is after five years, Gatorade can submit evidence that they've, you know, their substantial use of that term, and it becomes a registered trademark then. I mean, the fact that this was rejected and disclaimed doesn't remove it from trademark protection. It merely delays this until five years when Gatorade can come in and obtain registration without the disclaimer. Now, again, the determination of whether a word or phrase is being used as a trademark is a question of fact. Now, Mr. Mandel went through the likelihood of confusion factors, and to me it sounded more like a closing argument than a summary judgment situation. This is a case where there are facts in favor of both sides, and when there are disputes, it's not right for summary judgment. There are a lot of cases where likelihood of confusion was found where the goods and services were not identical but merely related. And here we would submit they're certainly related goods. In our reply brief, pages 9 through 20, we walk through the likelihood of confusion factors if the court delves into that level of detail, explaining how there are fact issues on each or a substantial number of the likelihood of confusion factors. Unless the court has any questions, thank you, Your Honors. Thank you very much. Thanks to both counsel, and the case will be taken under advisement.